IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


| | | |
|---|---|---|
| **RUDIS TORRES et al.,** | * | |
| | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | Civil No.: **PJM 15-2982** |
| | * | |
| **WASHRITE PLUS, INC. et al.,** | * | |
| | * | |
| Defendants | * | |


## MEMORANDUM OPINION

Rudis Torres and Milton Torres ("Plaintiffs") have brought this suit against Washrite Plus, Inc., Wash Rite, Inc., and corporate owners and operators Edward Walters and Julie Walters ("Defendants"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401 *et seq.*, and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501 *et seq.* The parties have now reached a settlement agreement, which they jointly request the Court to approve.

For the reasons that follow, the Court **GRANTS** the Joint Motion for Approval of FLSA Settlement, ECF No. 10, and **DISMISSES WITH PREJUDICE** all counts of the Complaint as to all Defendants.

## I.

### Factual and Procedural Background

Defendants Washrite Plus, Inc. ("WRP") and Wash Rite, Inc. ("WR") are Maryland corporations that provide power washing and cleaning services.  They are primarily owned and

operated by Defendants Edward Walters and Julie Walters. Compl. ¶¶ 2-6, ECF No. 1. According to the Complaint, Plaintiffs Rudis Torres and Milton Torres were employed by the Defendants from 2008 until about June 2015. *Id.* ¶ 17.

The Complaint submits that WRP and WR "operate together as a 'single enterprise employer' presenting itself to the public as an inter-related power washing and cleaning and related services entity." *Id.* ¶ 5. The purpose of having two corporations, Plaintiffs allege, was to "shield[] liability and attempt[] to mitigate payroll and overtime obligations," but WRP and WR nonetheless "use a common bookkeeper and payroll system" that "serves substantially the same function for all Defendants." *Id.* ¶¶ 6, 9. Both WRP and WR are purportedly subject to common control and operation by the Walters—the primary officers and owners of the two corporations—who were also responsible for setting Plaintiffs' hours and pay rate, for hiring and firing decisions, and general decisions of day-to-day operations. *Id.* ¶¶ 4, 7.

Plaintiffs allege that throughout their employment, they regularly worked over 40 hours per week, but they never received the overtime rate of one-and-one-half times their regular rate for hours worked in excess of 40 hours. *Id.* ¶¶ 18-22, 29-30. While Defendants assert that Plaintiffs were exempt employees not entitled to overtime wages, Plaintiffs maintain that they had the work responsibilities of non-exempt power washers and that they performed only general labor work duties. *See* Joint Motion for Approval of Settlement at 2-4, ECF No. 12.

On this basis, Plaintiffs initiated this suit on September 30, 2015, bringing claims pursuant to: (1) in Count 1, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*; (2) in Count 2, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401 *et seq.*; and (3) in Count 3, the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501 *et seq.* In their claims under the FLSA, Plaintiffs seek

all unpaid overtime wages, as well as an equal amount of liquidated damages (plus interest), and reasonable attorneys' fees and costs.  *See* Compl. ¶ 32.

After Defendants filed an Answer on November 6, 2015, the parties engaged in settlement discussions and eventually reached a settlement agreement.  On April 29, 2016, the parties filed a Joint Motion for Approval of FLSA Settlement, which is now pending before the Court.  ECF No. 10.  On July 12, 2016, the Court requested additional briefing as to the reasonableness of Plaintiffs' proposed attorneys' fees, and, in response, Plaintiffs filed a Declaration from counsel and detailed billing records.  ECF No. 12.

The Court now considers the parties' Joint Motion for Approval of FLSA Settlement.

## II.

### Standard of Review

Congress enacted the FLSA to protect workers from the poor wages and long hours that may result from significant inequalities in bargaining power between employers and employees. To that end, the statute's provisions are mandatory and generally not subject to bargaining, waiver, or modification by contract or settlement.  *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945).  Court-approved settlement is an exception to that rule, "provided that the settlement reflects a 'reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'"  *Saman v. LBDP, Inc.*, DKC-12-1083, 2013 WL 2949047, at *2 (D. Md. June 13, 2013) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

In reviewing FLSA settlements for approval, "district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*." *Saman*, 2013 WL 2949047, at *3 (citing *Hoffman v. First Student, Inc.*, No. WDQ-06-1882, 2010 WL

1176641, at *2 (D. Md. Mar. 23, 2010); *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 478 (D. Md. 2010)).  The settlement must reflect a "fair and reasonable resolution of a bona fide dispute over FLSA provisions."  *Id.* (quoting *Lynn's Food Stores*, 679 F.2d at 1355). The court considers (1) whether there are FLSA issues actually in dispute, (2) the fairness and reasonableness of the settlement, and (3) the reasonableness of the attorneys' fees, if included in the agreement.  *Id.* (citing *Lynn's Food Stores*, 679 F.2d at 1355); *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-cv-1310, 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009); *Lane v. Ko-Me, LLC*, 2011 WL 3880427, at *2–3 (D. Md. Aug. 31, 2011)).

**III.**

Bona Fide Dispute

In deciding whether a *bona fide* dispute exists as to a defendant's liability under the FLSA, the court examines the pleadings in the case, along with the representations and recitals in the proposed settlement agreement.  *See Lomascolo*, 2009 WL 3094955, at *16–17.

Under the FLSA, an employer may not "employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).  However, the FLSA exempts from the overtime requirement "any employee employed in a *bona fide* executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1); *see Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 121 (4th Cir. 2015).  The violation of Sections 206 or 207 of the FLSA trigger employer liability for unpaid wages as well as liquidated damages.  29 U.S.C. § 216(b).

The parties' Joint Motion, as well as previously filings, demonstrate that a *bona fide* dispute exists as to Defendants' liability under the FLSA.   Among other things, the parties

-4-

dispute whether Plaintiffs are exempt or non-exempt workers under the FLSA.  Defendants argue that Plaintiffs were "exempt" employees under the FLSA "white collar" *bona fide* executive exemption, relying on the factual and legal determinations of an audit of Defendants' pay practices conducted by the U.S. Department of Labor ("DOL").  *See* ECF No. 10 at 2.

Despite the DOL audit, Plaintiffs counter that Defendants cannot prove by clear and convincing evidence that the exemption applies to them for the purposes of the present suit. Plaintiffs maintain that they had the work responsibilities of non-exempt power washers and that they performed only general labor work duties—such that their duties fall under the definition of a non-exempt working foreman.  *See* 29 C.F.R § 541.115 ("distinguish[ing] between the *bona fide* executive and the 'working' foreman or 'working' supervisor who regularly performs 'production' work or other work which is unrelated or only remotely related to his supervisory activities").  Plaintiffs vigorously disagree that the executive exemption would apply to them, arguing that Defendants cannot show that managerial duties constituted at least 50% of their work time.  ECF No. 10 at 3-4.  Among other types of managerial duties, they deny that they exercised their own discretion, supervised at least two employees, had the ability to make hiring and firing recommendations, and delegated employee work schedules.  *See* 29 C.F.R. § 541.102 (specifying managerial duties).

Accordingly, Court finds that a *bona fide* dispute exists as to Defendants' liability under the FLSA, the resolution of which would depend on both further factual development and rulings of law.

### IV.

Fairness and Reasonableness

If a *bona fide* dispute is found to exist, the court must then evaluate the fairness and

reasonableness of the settlement based on the following factors:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of [] counsel . . . ; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.

*Saman*, 2013 WL 2949047, at *3 (quoting *Lomascolo*, 2009 WL 3094955, at *10).

Upon review of the parties' submissions and after considering the relevant factors enumerated by the *Lomascolo* court, the Court concludes that the Settlement Agreement is a fair and reasonable compromise of the parties' *bona fide* dispute.

An FLSA case may be settled at an early stage provided that the plaintiff has had sufficient opportunity to evaluate the viability of claims and potential range of recovery. *See Saman*, 2013 WL 2949047, at *3. The parties in this case reached a settlement agreement at an early stage, prior to formal discovery. Thus far, the parties have only engaged in informal discovery, during which Defendants produced to Plaintiffs' counsel the "time and pay records for the two year non-willful FLSA recovery period." ECF No. 10 at 4; *see* 29 U.S.C. § 255(a) (indicating a statute of limitations of two years for non-willful violations and three years for willful violations). As a result, Plaintiffs were able to make a reasonable estimate of their claims as to this specific recovery period. Milton Torres seeks unpaid overtime wages totaling $3,131.41, and Plaintiff Rudis Torres has an estimated claim to unpaid overtime wages in the amount of $3,681.82. *Id.* at 4-5. After estimating Plaintiffs' claims, parties then conducted arms-length negotiations to reach an agreement on the terms of the settlement, with the assistance of Magistrate Judge Day of this Court. *Id.* at 6.

Accordingly, the Court is satisfied that the parties have had sufficient opportunity to assess their claims and defenses as to these disputed legal and factual issues and to engage in

informed settlement negotiations.  Furthermore, the Court finds no fraud or collusion in the proposed settlement, given the experience of Plaintiffs' counsel—who has practiced law for 8 years, specializing in State and Federal wage and hour claims—the endorsement of the settlement by counsel for both parties, and the quality of the filings submitted to date.

Finally, as to the probability of Plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery, the Court is satisfied that the settlement of each Plaintiff's claims is fair and reasonable under the circumstances. The proposed settlement is as follows: Defendants will pay Plaintiffs a sum of $11,825, of which Milton Torres will receive $3,000, Rudis Torres will receive $4,000, and $4,825 will be designated as attorney's fees. Milton Torres estimates that he is owed $3,131.41 for the two year non-willful FLSA recovery period, as well as liquidated damages.  At $3,000, Milton's settlement will represent 96% of his alleged claims for unpaid overtime for this period and 48% of his claims after an equal amount of liquidated damages is factored in.  Rudis Torres claims he is entitled to unpaid overtime wages in the amount of $3,681.82, as well as liquidated damages.  At $4,000, Rudis's settlement will represent 108.6% of his alleged claims for unpaid overtime, and 54% of his claims when taking into account an equal amount of liquidated damages.  The parties explain that Rudis's and Milton's claims differ in one notable way: Milton did not perform overtime work during the year occurring three years prior to filing the lawsuit, whereas Rudis performed significant additional employment duties in this third year.  Counsel represent that, given that under Maryland law, Rudis would be entitled to recover on this third year without demonstrating willfulness, his overtime work during his third year was factored into the valuation of his claims.  ECF No. 10 at 5 n.1.

The Court observes that the amounts to be paid to Plaintiffs under the settlement agreement, when liquidated damages are factored in, are less than the value of the claims that Plaintiffs would be owed if they are successful at trial. Nevertheless, Plaintiffs state that they are willing to compromise for less than the value of their potential claims due to uncertainty about whether they would recover at all. Although Plaintiffs vigorously disagree that they qualify as exempt employees, as discussed *supra*, there was a clear risk associated with proceeding in the suit, particularly in light of the DOL's previous finding that the Plaintiffs were, in fact, exempt employees. Further, Plaintiffs acknowledge that liquidated damages in this case were "seriously doubtful," given that Defendants could convincingly argue that the DOL's determination should shield Defendants from liquidated damages liability. ECF No. 10 at 5.

In light of the foregoing, the Court finds this settlement reasonable under the circumstances.[1]

## V.

### Attorneys' Fees

The FLSA provides that "in addition to any judgment awarded to the plaintiff or plaintiffs," the court must "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The reasonableness of the fee award proposed in an FLSA settlement must be independently assessed, regardless of whether there is any suggestion that a "conflict of interest taints the amount the wronged employee recovers under a settlement

---

[1] The settlement also contains a mutual release claim as to all claims arising during Plaintiffs' employment. *See* ECF No. 10-1 at 4. Some courts have held that an overly broad release provision can render an FLSA agreement unreasonable if the release includes claims unrelated to those asserted in the complaint. *Saman*, 2013 WL 2949047, at *5 (citing cases). However, if the employee is compensated reasonably for the release executed, the settlement can be accepted, and the Court is not required to evaluate the reasonableness of the settlement as to the non-FLSA claims. *See Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 410 (D. Md. 2014). The Court finds that Plaintiffs were reasonably compensated in the amount of $3,000 as to Milton Torres and $4,000 as to Rudis Torres, particularly light the fact that Plaintiffs' counsel was doubtful as to recovery of liquidated damages.

agreement." *Lane v. Ko-Me, LLC*, No. 10-2261, 2011 WL 3880427, at *3 (D. Md. Aug. 31, 2011) (quoting *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1243 (M.D. Fla. 2010)).   In making that assessment, courts typically use the principles of the traditional lodestar method as a guide. *Id.* (citing cases).

The court determines an attorneys' fees award by calculating the lodestar amount, which is defined as the "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008); *see Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 412 (D. Md. 2014) (quoting *Lopez v. XTEL Const. Grp., LLC*, 838 F. Supp. 2d 346, 348 (D. Md. 2012)). An hourly rate is reasonable if it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Duprey*, 30 F. Supp. 3d at 412 (quoting *Blum v. Stenson*, 465 U.S. 886, 890 n.11 (1984)). In Appendix B to its Local Rules, this Court has established rates that are deemed reasonable for lodestar calculations. *Id.* (citing *Poole ex rel. Elliott v. Textron, Inc.*, 192 F.R.D. 494, 509 (D. Md. 2000)).  Plaintiffs are expected to provide all documentation necessary for the court to make a lodestar determination as to the hours reasonably expended, including but not limited to declarations establishing the hours expended by counsel, broken down for each task performed. *Saman*, 2013 WL 2949047, at *7; Local Rule 109.2; Appendix B to the Local Rules.

Plaintiffs' counsel, Gregg Greenberg, Esquire, has provided a declaration and detailed billings statements in support of the reasonableness of the attorneys' fees in this case.  Regarding the calculation of his hourly rate, Greenberg states that he graduated from law school in 2007 and has over eight years of legal experience.  Greenberg Decl. ¶ 1, ECF No. 12.  He is a partner at the law firm of Zipin, Amster & Greenberg LLP of Silver Spring, Maryland, and has a practice that specializes in State and Federal wage and hour cases.  *Id.* ¶¶ 5-6.   In this case, he charged

his standard hourly billing rate of $295.  *Id.* ¶ 7.   Per Appendix B to the Local Rules, a presumptively reasonable rate for lawyers admitted to the bar for five to eight years is $165-$300, while the rate for nine to fourteen years is $225-350.   Accordingly, the Court finds Greenberg's hourly rate to be reasonable under either range.

Next, Greenberg avers in his declaration that he billed 32.7 hours during the course of this suit—a number of hours he believes was necessary to achieve a successful outcome in Plaintiffs' case.  *Id.* ¶¶ 14-15.  He has submitted detailed billing statements evidencing the 32.7 hours billed, broken down by date and activity performed.  *See* ECF No. 12, Ex. to Greenberg Decl.  At his rate of $295 per hour, with 32.7 hours billed, he incurred $9,646.50 in fees, not including other litigation costs.  *Id.* ¶ 14.  In addition, Plaintiffs have expended $515.00 in other costs, including filing fees and costs for service of process.  *Id.* However, in the interest of reaching a settlement, Greenberg and his firm agreed to accept a reduced award of $4,825 in fees, which represents less than half of the total amount incurred in this case.  At an hourly rate of $295, this amounts to a claim for about 16.4 hours.

The Court concludes that 16.4 hours is a reasonable period of time for Plaintiffs' counsel to bill for the case, given that he had to investigate Plaintiffs' claims, strategize as to the DOL's factual and legal findings that Plaintiffs were exempt employees, draft a complaint, review time and pay records, and engage in settlement negotiations.   Accordingly, the Court finds the attorney fee award in the proposed settlement of $4,825 to be reasonable.

## VI.

### Conclusion

For the foregoing reasons, the Court **GRANTS** the Joint Motion for Approval of FLSA Settlement, ECF No. 10, and **DISMISSES WITH PREJUDICE** all counts of the Complaint

against all Defendants.

A separate Order will **ISSUE**.


_____**/s/**_____
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**August 1, 2016**